## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ELI D. GOFFMNA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| SOTHEBY'S, DOMENICO DE SOLE, THOMAS S. SMITH, PEREGRINE ANDREW MORNY CAVENDISH (DUKE OF DEVONSHIRE), MICHAEL J. WOLF, JESSICA M. BIBLIOWICZ, LINUS WING LAM CHEUNG, KEVIN C. CONROY, DANIEL S. LOEB, MARSHA E. SIMMS, DIANA L. TAYLOR, DENNIS M. WEIBLING, and HARRY J. WILSON, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Eli D. Goffmna, by her undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Sotheby's ("Sotheby's" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Sotheby's, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Sotheby's by BidFair USA LLC ("Parent") through Parent's wholly-owned subsidiary

BidFair MergeRight Inc. ("Merger Sub") (collectively "BidFair").

2.      On June 16, 2019, Sotheby's entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Merger Sub will be merged with and into Sotheby's, with Sotheby's continuing as the surviving corporation and wholly-owned subsidiary of Parent (the "Proposed Transaction").  Upon consummation of the merger, each share of Sotheby's common stock will be converted into the right to receive $57.00 in cash (the "Merger Consideration").

3.      On July 12, 2019, in order to convince Sotheby's public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      However, the Proxy contains materially incomplete and misleading information.  First, the Proxy fails to provide enough information regarding financial projections.  In particular, the Proxy fails to disclose: (i) the unlevered free cash flows for Sotheby's from 2019 through 2023; and (ii) the inputs used to calculate the various forms of Sotheby's Adjusted EBITDA, including Base Business EBITDA, Incremental EBITDA from New Initiatives, and Combined EBITDA.  Second, the Proxy omits material information regarding the valuation analyses performed by Sotheby's financial advisor, LionTree Advisors LLC ("LionTree").

5.      The Proposed Transaction is expected to close in the 4th quarter this year and the special meeting of the Company's shareholders to vote on the Proposed Transaction will be scheduled in the coming weeks.  Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting, so Plaintiff can properly exercise her corporate voting rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff

seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Sotheby's public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Sotheby's common stock trades on the New York Stock Exchange, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  Further, Sotheby's holds its principal executive offices in this District at 1334 York Avenue, New York, NY 10021.  In fact, Sotheby's will be holding its special

meeting to vote on the Proposed Transaction at its principal executive offices.  In addition, the Company's counsel, Sullivan & Cromwell LLP, is also located in this District at 125 Broad Street, New York, NY 10004.  Last, Sotheby's financial advisor for the Proposed Transaction, LionTree, is located in this District at 660 Madison Avenue, New York, NY 10065.

## PARTIES

10.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Sotheby's common stock.

11.     Defendant Sotheby's is a public company incorporated under the laws of Delaware with principal executive offices located at 1334 York Avenue, New York, NY 10021. Sotheby's common stock is traded on the New York Stock Exchange under the ticker symbol "BID."

12.     Defendant Domenico De Sole is, and has been at all relevant times, a director of the Company and Independent Chairman of the Board.

13.     Defendant Thomas S. Smith is, and has been at all relevant times, a director of the Company and its President and Chief Executive Officer.

14.     Defendant Peregrine Andrew Morny Cavendish (Duke Of Devonshire) is, and has been at all relevant times, a director of the Company and Deputy Chairman of the Board.

15.     Defendant is Michael J. Wolf, and has been at all relevant times, a director of the Company.

16.     Defendant Jessica M. Bibliowicz is, and has been at all relevant times, a director of the Company.

17.     Defendant Linus Wing Lam Cheung is, and has been at all relevant times, a director of the Company.

18.     Defendant Kevin C. Conroy is, and has been at all relevant times, a director of the Company.

19.     Defendant Daniel S. Loeb is, and has been at all relevant times, a director of the Company.

20.     Defendant Marsha E. Simms is, and has been at all relevant times, a director of the Company.

21.     Defendant Diana L. Taylor is, and has been at all relevant times, a director of the Company.

22.     Defendant Dennis M. Weibling is, and has been at all relevant times, a director of the Company.

23.     Defendant Harry J. Wilson is, and has been at all relevant times, a director of the Company.

24.     The defendants identified in paragraphs 12 through 23 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Sotheby's, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

25.     Sotheby's is a global art business company. The Company is engaged in offering its clients opportunities to connect with and transact in a range of objects. The Company offers a range of art-related services, including the brokerage of private art sales, private jewelry sales, private selling exhibitions at its galleries, art-related financing, and art advisory services, as well as retail wine locations. The Company operates through two segments: Agency and Finance. The Agency segment matches buyers and sellers of authenticated fine art, decorative art, jewelry, wine and collectibles through the auction or private sale process. The Finance segment earns interest income through art-related financing activities by making loans that are secured by works of art.

26.     On June 16, 2019, the Board caused the Company to enter into the Merger Agreement with BidFair.  Pursuant to the terms of the Merger Agreement, Sotheby's shareholders will be

entitled to receive $57.00 in cash for each share of Sotheby's common stock they own.

27.     According to the June 17, 2019, press release announcing the Proposed Transaction:

**Sotheby's Announces Definitive Agreement to be Acquired by Patrick Drahi**

*Sotheby's Shareholders to Receive $57 Per Share in Cash Transaction Valued at $3.7 Billion*

*Acquisition Would Result in Sotheby's Becoming a Private Company*

NEW YORK, June 17, 2019 /PRNewswire/ -- Sotheby's (BID) today announced that it has signed a definitive merger agreement to be acquired by BidFair USA, an entity wholly owned by media and telecom entrepreneur as well as art collector, Patrick Drahi.  Under the terms of the agreement, which was approved by Sotheby's Board of Directors, shareholders, including employee shareholders, will receive $57.00 in cash per share of Sotheby's common stock in a transaction with an enterprise value of $3.7 billion.  The offer price represents a premium of 61% to Sotheby's closing price on June 14, 2019, and a 56.3% premium to the company's 30 trading-day volume weighted average share price.  The transaction would result in Sotheby's returning to private ownership after 31 years as a public company traded on the New York Stock Exchange.

Tad Smith, Sotheby's CEO, said, "Patrick Drahi is one of the most well-regarded entrepreneurs in the world, and on behalf of everyone at Sotheby's, I want to welcome him to the family.  Known for his commitment to innovation and ingenuity, Patrick founded and leads some of the most successful telecommunications, media and digital companies in the world.  He has a long-term view and shares our brand vision for great client service and employing innovation to enhance the value of the company for clients and employees.  This acquisition will provide Sotheby's with the opportunity to accelerate the successful program of growth initiatives of the past several years in a more flexible private environment. It positions us very well for our future and I strongly believe that the company will be in excellent hands for decades to come with Patrick as our owner."

Domenico De Sole, Chairman of Sotheby's Board of Directors, said, "Following a comprehensive review, the Board enthusiastically supports Mr. Drahi's offer, which delivers a significant premium to market for our shareholders.  After more than 30 years as a public company, the time is right for Sotheby's to return to private ownership to continue on a path of growth and success."

"I am honored that the Board of Sotheby's has decided to recommend my offer," commented Patrick Drahi.  "Sotheby's is one of the most elegant and aspirational brands in the world.  As a longtime client and lifetime admirer

of the company, I am acquiring Sotheby's together with my family.  We thank Domenico and the rest of the Sotheby's Board for its support and look forward to getting started with Tad and the wonderful members of his team to define our future."

The closing of the deal is subject to customary conditions, including regulatory clearance and shareholder approvals, but is not subject to the availability of financing.  The transaction is expected to close in the fourth quarter of 2019 following shareholder approval.

LionTree Advisors is serving as financial advisor to Sotheby's in connection with the transaction, and Sullivan & Cromwell LLP is serving as the company's legal counsel.  BNP Paribas and Morgan Stanley are acting as financial advisors to BidFair, BNP Paribas acted as sole financing provider, and Hughes Hubbard & Reed LLP and Ropes & Gray International LLP are serving as its legal advisors.

(Emphasis in original).

**The Proxy Omits Material Information**

28.     On July 12, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The special meeting of Sotheby's stockholders to vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

29.     To start, the Proxy fails to provide enough information regarding financial projections.  In particular, the Proxy fails to disclose: (i) the unlevered free cash flows for Sotheby's from 2019 through 2023; and (ii) the inputs used to calculate the various forms of Sotheby's Adjusted EBITDA, including Base Business EBITDA, Incremental EBITDA from New Initiatives, and Combined EBITDA.  Second, the Proxy omits material information regarding LionTree's financial analyses.

30.     The Proxy fails to provide enough information regarding financial projections.  In

7

particular, the Proxy fails to disclose the Company's unlevered free cash flows for 2019 through 2023 ("Cash Flow Projections"). Proxy at 62-64.  It is indisputable that the Cash Flow Projections were the most important input in LionTree's *Discounted Cash Flow Analysis* because the analysis is based upon discounting the Cash Flow Projections to present value. *Id.* at 58.  However, Defendants elected to exclude the Cash Flow Projections from the Proxy, despite the fact that they simultaneously elected to include a purported "summary" of LionTree's *Discounted Cash Flow Analysis*. *Id.*

31.    The Cash Flow Projections are material to Sotheby's shareholders, and their omission renders the summary of LionTree's *Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Sotheby's shareholders cannot evaluate for themselves the reliability of LionTree's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true

8

value of the Company or was the result of an unreasonable judgment by LionTree, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

32.     Further, the omission of the Cash Flow Projections renders the projection tables on pages 62-64 of the Proxy incomplete and misleading because, without the Cash Flow Projections, the projection summaries provide a misleading overall valuation picture of Sotheby's.  This is caused by significant differences between unlevered free cash flow projections—widely recognized as the most important valuation metric when it comes to valuing a company and its stock—and the EBITDA projections that were included in the Proxy.

33.     EBITDA projection metrics are not sufficient analogs for cash flow projections. Well settled principles of corporate finance and valuation dictate that the value of companies and their stock should be premised upon the company's projected future cash flows, not projected EBITDA.[1]

34.     There are fundamental differences between unlevered free cash flow and EBITDA. EBITDA is not a sufficient alternative to unlevered free cash flows—as Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder.  Too many investors focus on earnings before interest, taxes, depreciation, and amortization.  That makes sense, only if you think capital expenditures are funded by the tooth fairy." [2]  Relying solely on EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls.  EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understanding a company's value.[3]  As a result of these material differences between EBITDA and unlevered free cash flows, experts recognize unlevered free cash

---

[1]     Pratt, Shannon. "Net Cash Flow: The Preferred Measure of Return." Cost of Capital. 16. ("Occasionally, we find an analyst treating earnings before interest, taxes, depreciation, and amortization (EBITDA) as if it were free cash flow. This error is not a minor matter…").
[2]     Elizabeth MacDonald, *the Ebitda folly*, FORBES (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.
[3]     Cody Boyte, *Why EBITDA is Not Cash Flow*, AXIAL FORUM (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/

flows as a much more accurate measure when it comes to analyzing the expected performance of a company.

35.     In light of these significant differences between the Cash Flow Projections and the EBITDA figures, the tables of projections on pages 62 to 64 of the Proxy were materially incomplete and misleading because, by failing to include the Cash Flow Projections, the tables provide a materially incomplete and misleading overall valuation picture of both companies.  Simply put, unlevered free cash flow projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

36.     Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear:   Is the Merger Consideration fair compensation given Sotheby's projected cash flows?  Without the line items underlying Sotheby's unlevered free cash flows, the Company's shareholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

37.     Similarly, Defendants' failure to disclose the inputs used to calculate the various forms of Sotheby's Adjusted EBITDA, including Base Business EBITDA, Incremental EBITDA from New Initiatives, and Combined EBITDA renders the Proxy materially misleading. Proxy 62-64.

38.     If a Proxy discloses financial projections and valuation information, such information must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants failure to disclose Sotheby's Cash Flow

Projections and the inputs used to calculate the various forms of Adjusted EBITDA renders the Proxy materially misleading.

39.     Next, the Proxy omits material information regarding LionTree's financial analyses.

40.     With respect to LionTree's *Analyst Price Target Analysis*, the Proxy does not disclose the four, one-year forward share price targets for Sotheby's common stock utilized by LionTree. Instead, the Proxy merely discloses the average one-year forward price target for Sotheby's common stock as of June 14, 2019. Proxy at 59.

41.     With respect to LionTree's *Premiums Paid Analysis*, the Proxy fails to disclose the premiums paid in each of the selected all cash acquisitions reviewed by LionTree.  Further, the Proxy only provides the median premium for the selected acquisitions without disclosing the high, low, and medium premium prices paid for the selected acquisitions. *Id.*

42.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote her shares in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use

of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

47.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding financial projections.  In particular, the Proxy fails to disclose: (i) the unlevered free cash flows for Sotheby's from 2019 through 2023; and (ii) the inputs used to calculate the various forms of Sotheby's Adjusted EBITDA, including Base Business EBITDA, Incremental EBITDA from New Initiatives, and Combined EBITDA.  Additionally, the Proxy omits material information regarding LionTree's financial analyses.

48.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to

disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

49.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that LionTree reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by LionTree, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review LionTree's analyses in connection with their receipt of the fairness opinions, question LionTree as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or

failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

51.     Sotheby's is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

52.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Sotheby's within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sotheby's, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly

after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were thus directly involved in preparing this document.

57.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: July 19, 2019

**Monteverde & Associates PC**

By:   _/s/ Juan E. Monteverde_____
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*